Josh H. Escovedo, State Bar No. 284506
W. Scott Cameron, State Bar No. 229828
Kavan J. Jeppson, State Bar No. 327547
WEINTRAUB TOBIN CHEDIAK COLEMAN GRODIN
Law Corporation
400 Capitol Mall, 11th Floor
Sacramento, California   95814
(916) 558-6000 – Main
(916) 446-1611 – Facsimile
Email: jescovedo@weintraub.com
Email: scameron@weintraub.com
Email: kjeppson@weintraub.com

Attorneys for Plaintiffs CMS Lathrop Way, LLC and CMS Woodlake Property, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CMS LATHROP WAY, LLC, a limited liability company; and CMS WOODLAKE PROPERTY, LLC, a limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF SACRAMENTO, a municipal entity,<br><br>    Defendant. | Case No.:<br><br>**COMPLAINT** |

Plaintiffs CMS Lathrop Way, LLC and CMS Woodlake Property, LLC (collectively, "CMS") hereby allege as follows:

## NATURE OF THE CASE

1. The City of Sacramento faces a significant homelessness crisis. Unfortunately, after giving the matter consideration and holding meetings among the City of Sacramento's highest-ranking decisionmakers, the City of Sacramento has chosen to deal with its situation by imposing a de facto policy of allowing certain regions of the City to serve as containment zones. This policy has been to the detriment of citizens with residential and commercial property that exists within these containment zones. The City has effectively handed over these areas to the homeless population, and turned them into no-response or no-enforcement zones.

2. CMS Lathrop Way, LLC and CMS Woodlake Property, LLC own commercial real estate at the location commonly referred to Lathrop Way, which is located near the American River Parkway (the "Property").

3. The area surrounding the Property is blighted. It has become a graveyard for abandoned vehicles, and its streets are lined with mobile homes, RVs, and other vehicles serving as housing. Even worse, the area is unsanitary, unsafe, and otherwise constitutes a public and private nuisance to the property owners and any citizens passing through the area. There have been numerous violent incidents in the area, including arson and vandalism. The conditions prevailing in this area constitute a violation of the fundamental civil rights of those who own property in the area and those who work there.

4. This situation gives rise to a matter of fundamental fairness. A city-wide, and frankly, a statewide, issue should not be allowed to disproportionately affect a few discrete neighborhoods in Sacramento. The City of Sacramento cannot simply abandon and affirmatively give control of certain neighborhoods to the homeless to spare other neighborhoods from having to deal with the homelessness epidemic.

5. The City of Sacramento has refused to enforce its own laws and those of the state that prohibit the homeless from loitering, vandalizing, and otherwise inhabiting private property and the surrounding public property. It has also refused to enforce its own laws that should require the City to remove abandoned vehicles, which the Sacramento City Code admits constitute a nuisance. Instead, the City of Sacramento has hidden behind a Ninth Circuit case titled *Martin v. City of Boise*, which actually has no bearing on these circumstances. If *Martin* truly immunized municipalities from doing what CMS has been demanding that the City of Sacramento do, then why have multiple other municipalities, including the City and County of San Francisco, immediately resolved such lawsuits by agreeing to comply with the law? It's because *Martin* does no such thing.

6. To the contrary, CMS is informed and believes that the decisionmakers for the City of Sacramento have come together and affirmatively decided to not enforce state law or the Sacramento City Code against the homeless population in certain neighborhoods. CMS is

informed and believes that some of these decisionmakers, including Mayor Darrell Steinberg, have directed multiple agencies, including the Sacramento Police Department and Code Enforcement, to cease enforcement of the aforementioned laws against the homeless population in certain areas of Sacramento. Mayor Darrell Steinberg's policies have made it clear that the City of Sacramento is fully aware of the destruction the homeless population is causing in certain areas of Sacramento, including the area near the Property, but has no plan or timeline for remedying the ongoing harm or enforcing the law equally in all parts of the City of Sacramento. The City of Sacramento's conduct goes beyond merely failing to enforce its laws. The City has provided affirmative support to the homeless population by consciously choosing to turn a blind eye to their actions, directing the enforcement agencies to stop doing their jobs and policing, and essentially endorsing the homeless population's violation of the rights of other citizens. Mayor Steinberg has even gone to the extent of trying to pass an ordinance that would have provided even greater protections for the homeless population and further precluded law or code enforcement from taking any action against the homeless population for breaking the law. As a result of the City of Sacramento's actions, the area surrounding the Property has been transformed into a zone of lawlessness where the rights of citizens other than those of the homeless population are disregarded. In order to help ensure that the homeless population remains in the containment zones, CMS is informed and believes that the City of Sacramento delivers resources to the homeless population, including sterile needles for drug use, food, and other material support to help reduce the likelihood of the recipients relocating to more prominent areas of the City. In essence, the City of Sacramento has officially endorsed and supported the homeless population's unlawful invasion and occupation of the area surrounding the Property.

7. The City of Sacramento's decision to impose a policy of abandoning the area surrounding the Property, resulting in its failure and outright refusal to enforce its laws, has caused CMS significant damage. It has caused the property value to decrease, and it has caused CMS to incur significant expenses cleaning the area, which has been repeatedly littered with waste, debris, excrement, and drug paraphernalia. In other words, the neighborhood has

become a government-sanctioned area of lawlessness where the homeless population can do anything and everything it wants without any regard for consequences. By all means, CMS and its principals sympathize with the plight of the homeless, and CMS has never requested that the City of Sacramento impose criminal penalties on the homeless for their actions. CMS has only asked the City of Sacramento to relocate the homeless and remove the waste, debris, and abandoned vehicles in the area. But that has proven to be more than the City is willing to do. To the contrary, the City has decided to abandon the area and has directed its enforcement agencies to stop enforcement of the law in the area surrounding the Property, despite knowing that its conduct would cause injury to the property owners, including CMS.

8. As a result of the City of Sacramento's adoption of a policy supporting the homeless population's occupation of the area surrounding the Property, acting with deliberate indifference toward those suffering harm from it, and instruction to enforcement agencies to not police the homeless population, CMS has repeatedly pleaded with the City of Sacramento to cease enabling its injury, the destruction of its property, and the imminent dangers posed to it. The City of Sacramento has not listened, or has not cared, and has left CMS with no choice but to file this lawsuit to compel the City of Sacramento to terminate its policy of abandoning the area around the Property and support for the homeless population's misconduct in the area. All of this could be rectified by the City of Sacramento simply enforcing the law as it is required to do.

## THE PARTIES

9. CMS Lathrop Way, LLC is a California limited liability company with its principal place of business located at 2323 S. Bascom Avenue, Suite 100, Campbell, CA 95008. CMS Lathrop Way, LLC owns the properties commonly referred to as 211, 221, and 231 Lathrop Way, Sacramento, CA 95815, and has since 2002.

10. CMS Woodlake Property, LLC is a California limited liability company with its principal place of business located at 2323 South Bascom Avenue, Suite 100, Campbell, CA 95008. CMS Woodlake Property, LLC owns the properties commonly referred to as 241 and

///

251 Lathrop Way, Sacramento, CA 95815, and has since 2005. CMS Lathrop Way, LLC and CMS Woodlake collectively own the Property at issue in this dispute.

11. The City of Sacramento is the capital of California and the municipal entity responsible for administration of the City's government and oversight. The City of Sacramento is responsible for enforcing the laws of California and the Sacramento City Code within its geographic boundaries.

## JURISDICTION AND VENUE

12. CMS asserts claims under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution. As a result, this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

13. This Court has supplemental jurisdiction over CMS's state law claims under 28 U.S.C. § 1367, since they arise from the same case and controversy as CMS's federal claims.

14. CMS seeks only equitable and injunctive relief for its state law claims. Accordingly, it need not submit a claim with the City of Sacramento under the California Tort Claims Act.

## ARTICLE III STANDING

15. CMS has suffered a concrete and particularized injury in connection with the conduct about which it complains. As alleged in greater detail below, CMS has suffered a concrete and particularized injury resulting in various federal and state law claims against the City of Sacramento arising from its handling of the homelessness epidemic. Specifically, the City of Sacramento, through its highest-ranking decisionmakers, has formulated and implemented a policy through which it has abandoned the area surrounding the Property, treating it as a containment zone for the plight of the homeless, and directing law and code enforcement agencies not to enforce the law as applied to the homeless population. This policy has been exacerbated by the City of Sacramento's provision of material resources to the homeless population within the containment zones, including sterile needles for drug use, food, and other material support, which reduces the need for the homeless population to remain mobile and helps to concentrate the population within the containment zones. These actions

have cumulatively resulted in significant harm to CMS in the form of property damage, deprivation of constitutional, statutory, and common-law rights, and other forms of injury. The City of Sacramento's conduct is the moving force behind the constitutional violations below.

16. The injury in fact is fairly traceable to the challenged conduct of the City of Sacramento. If the City of Sacramento had not engaged in the aforementioned conduct, CMS would not have suffered the harm at issue in this Complaint.

17. The injury in fact is likely to be redressed by a favorable judicial decision. In fact, the injury in fact can only be redressed through a favorable judicial decision since the City of Sacramento has refused to rectify its misconduct in response to CMS's requests and pleas for assistance.

## FACTUAL ALLEGATIONS

18. CMS acquired the Property between 2002 and 2005. Since that time, the homelessness epidemic has grown exponentially worse.

19. Unfortunately for CMS, the Property's surrounding area is not exempt from the epidemic. In fact, the Property is located within one of the containment zones that the City of Sacramento has taken action to develop to help isolate and/or concentrate the plight of the homelessness in those areas, as opposed to the more affluent neighborhoods like East Sacramento, Land Park, Westlake, and Sierra Oaks.

20. The City of Sacramento's decision to abandon the area surrounding the Property and treat it as a containment zone has created a variety of problems for all concerned parties, including residents, employees, businesses, schools, police, and the homeless themselves. The area surrounding CMS's property is blighted. It has become a graveyard for abandoned vehicles, and its streets are lined with mobile homes, RVs, and other vehicles serving as housing. Even worse, the area is unsanitary, unsafe, and otherwise constitutes a public and private nuisance to the property owners and any citizens passing through the area, including those who come to the area to work jobs necessary to feed their families. These individuals have been subjected to an inability to use public sidewalks, streets, and other rights-of-way to access their businesses in the area as a result of the homeless occupation. As a result, they

cannot enjoy full access to their properties. The conditions prevailing in this area constitute a violation of the fundamental civil rights of those who own property in the area and those who work there. CMS is informed and believes that the violations are so frequent and pervasive that other property owners or tenants in the area have lost hope that things will change and vacated the area.

21.     Despite these severe violations of fundamental civil rights and the existence of significant public and private nuisances, the City of Sacramento has failed and refused to enforce the laws of the State of California, as well as its own Sacramento City Code. Despite numerous requests from CMS, the City of Sacramento has absconded from its municipal duties and facilitated the existence of anarchy. The homeless have done significant damage to the surrounding area, including the Property, and the City of Sacramento has refused to do anything about it. The homeless have lit fires in the area and vandalized it in a variety of other ways. The homeless also openly engage in drug use and sales and prostitution in the neighborhood, free of any fear of legal consequences. The City has full knowledge of the problems created for businesses and individuals working and residing near the Property, including violence, property damage, lack of police presence, the inability to safely enter and leave the Property, the inability to safely receive scheduled deliveries, and other adverse impacts on residents, businesses, and property owners in the area. In fact, while all of this is going on in the surrounding area, the City of Sacramento has done worse than simply disregard its obligations. Instead, the City of Sacramento has thrown its hands up and claimed to have no obligation to enforce the law and protect its citizens and their constitutional and property interests. The City has gone as far as claiming that the Ninth Circuit's decision in *Martin v. City of Boise* precludes it from being able to relocate the homeless outside of this containment zone or to clean up the debris, including abandoned vehicles, left in their wake. But even a cursory reading of *Martin* reveals that the City of Sacramento's reliance is unwarranted. The City of Sacramento has simply chosen to rely on *Martin* with the hope that its citizens will not challenge its frivolous legal contention and to avoid having to clear the homeless out of this de facto containment zone and into the rest of the city.

22. The City of Sacramento's complicity goes beyond mere omission and fraudulent misrepresentations concerning the effect of *Martin*. CMS is informed and believes that decisionmakers at the City of Sacramento have considered the situation and decided to abandon the area, going so far as to direct law and code enforcement to not enforce the law as it applies to the homeless population in those areas. Under this directive, law enforcement and code enforcement have refused to take action to assist CMS, even going so far as to tell CMS's agents that their hands are tied by the City of Sacramento's decisionmakers. CMS is also informed and believes that the City of Sacramento has directly or indirectly provided resources to the homeless in the containment zones, such as sterile needles for drug use, food, and other material support that have encouraged and facilitated the homeless population to not leave the area. This conduct constitutes official support of the homeless population's invasion and occupation of the area surrounding the Property.

23. The crisis in the area surrounding the Property presents an immediate and dire public health issue, as well as an environmental issue resulting from the presence of human feces, urine, and other contaminants related to drug use that exists on the sidewalks and streets.

24. These issues have caused direct and proximate harm to CMS and its tenants and their patrons. The presence of drug addicts injecting themselves, the odors of smoked crystal methamphetamine and human waste, as well as the open drug dealing in the neighborhood have caused the principals and employees of CMS and the tenants and their patrons to fear for their safety. These fears have been further exacerbated by rampant lawlessness. The City of Sacramento has acted with deliberate indifference to these known and obvious dangers, as well as the other known and obvious dangers described throughout this pleading.

25. CMS has been subjected to ever-increasing property damage and economic loss every day that the City of Sacramento carries out its policy and practice of supporting the homeless population's invasion and occupation of the area surrounding the Property, abandonment of the area, and refusal to enforce its laws. This is, in part, because of the City's active support and affirmative encouragement of its officers to look away and allow the

homeless population to commit numerous and continuous crimes in the area surrounding the Property. As a result, CMS has been forced to expend additional monetary resources cleaning up the Property and providing additional security to protect the Property and its tenants, which would not be necessary if the City of Sacramento were to uphold its duties and obligations to its constituency. These funds have been spent in addition to the significant taxes that CMS has been forced to pay to the City of Sacramento and the State of California for, among other things, services that it is clearly not receiving the benefit of, such as law enforcement.

26. Despite CMS's best efforts, the Property has been physically invaded by the homeless population on multiple occasions. This not only deprives CMS of its property interests, but it also deprives CMS of its liberty interest to be protected from state-created dangers, since the City of Sacramento has acted with deliberate indifference to this known and obvious danger.

27. The City of Sacramento's intentional acts and omissions that have allowed the area surrounding the Property to serve as a containment zone have created dire consequences for the area's residents and businesses, including CMS. The City of Sacramento's acts and omissions threaten CMS with the following specific consequences: (a) an increased risk of infection of COVID-19; (b) interference with its property rights; (c) loss of business and other opportunities; (d) interference with the California constitutional right to pursue happiness; and (e) interference with its federal Due Process rights.

28. The City of Sacramento is legally obligated to take immediate action to protect CMS's legal rights, as well as its well-being and that of its employees and tenants. The use of the surrounding area as a containment zone must cease. The abandonment of the surrounding area must cease, and the directives to law and code enforcement to not enforce the law as applied to the homeless population must end.

29. The City of Sacramento's conduct is the moving force behind the constitutional and statutory violations alleged in this Complaint. The causal link between the City of Sacramento's conduct was reasonably foreseeable, yet the City of Sacramento still acted with

///

deliberate indifference to the known and obvious consequences presented. As a result, CMS's property has lost all or nearly all economic value due to rampant crime and vandalism.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Violation of Due Process

### 42 U.S.C. § 1983; U.S. Const. Amend. V and XIV

### Against the City of Sacramento

30. CMS realleges and incorporates by this reference each and every allegation set forth above as though also fully set forth below.

31. The City of Sacramento, by abdicating its duties under the law to ensure safe and secure living conditions in the area surrounding the Property, has denied residents due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. The City has infringed the rights of CMS by creating, assisting, endorsing, and/or encouraging a policy of not enforcing the laws in certain areas of the City, including the Property, as applied to the homeless population and providing material support to the homeless population's unlawful occupation of the area surrounding the Property. The dangerous and filthy conditions have denied residents their unimpeded liberty and use of their property, and the City of Sacramento has allowed these conditions to become so bad that they actually threaten the lives, health, and safety of the residents.

32. The City has infringed CMS's constitutionally protected rights without providing CMS any due process before depriving it of these rights, or providing any recourse following the deprivation of the rights. Specifically, the City provided CMS with no notice or opportunity to be heard before or after designating the Property as a containment zone and abandoning the area. This effectively denied CMS its full rights to access and use of the Property.

33. CMS is informed and believes that the City has engaged in this conduct as a result of a policy created and implemented by the City of Sacramento's highest-ranking decisionmakers, including Mayor Darrell Steinberg.

///

34. CMS is informed and believes that the City of Sacramento's acts and omissions were done with deliberate intent and/or reckless disregard of CMS's rights. As a result, CMS seeks injunctive relief and attorney's fees and costs incurred bringing this action.

### SECOND CLAIM FOR RELIEF

### Violation of Due Process—State Created Danger Doctrine

### 42 U.S.C. § 1983; U.S. Const. Amend. XIV

### Against the City of Sacramento

35. CMS realleges and incorporates by this reference each and every allegation set forth above as though also fully set forth below.

36. By the acts and omissions described above, the City of Sacramento has affirmatively created or increased the risk that CMS would be exposed to dangerous conditions, which placed CMS specifically at risk, and CMS was harmed as a result.

37. The City of Sacramento knew or should have known that its acts or omissions specifically endangered CMS, and the City of Sacramento was deliberately indifferent and even engaged in conduct that it knew or should have known would exacerbate the harm. Specifically, the City of Sacramento formulated and implemented a policy whereby it abandoned the area surrounding the Property, treating it as a containment zone for the plight of homelessness, and directed its law and code enforcement agencies not to enforce the law as applied to the homeless population. CMS is informed and believes that the City of Sacramento has also supported the homeless population and its misconduct by providing sterile needles for drug use, food, and other material support to the homeless population within the City of Sacramento's designated containment zones to discourage the mobility of the homeless. The City of Sacramento has also supported the homeless population and its misconduct by taking the frivolous position that the City of Sacramento is unable to enforce the law because of the Ninth Circuit precedent in *Martin*. These actions cumulatively constitute a state-created danger and render the City of Sacramento liable.

///

///

THIRD CLAIM FOR RELIEF

Municipal Liability for Unconstitutional Custom or Policy

42 U.S.C. § 1983

Against the City of Sacramento

38. CMS realleges and incorporates by this reference each and every allegation set forth above as though also fully set forth below.

39. CMS is informed, believes, and alleges that, at all times mentioned, the City of Sacramento and its agents, with deliberate indifference and conscious and reckless disregard for the safety, security, and constitutional and statutory rights of CMS, engaged in the unconstitutional conduct and omissions set forth above, all pursuant to policy, procedure, or customs held by the City of Sacramento. CMS is informed and believes that these policies, procedures, and customs were formulated and implemented by the highest-ranking decisionmakers at the City of Sacramento, including Mayor Darrell Steinberg.

40. The actions and inactions of the City of Sacramento were known or should have been known to the policymakers responsible for the relevant agencies and occurred with deliberate indifference to the constitutional violations identified above, and/or to the strong likelihood that constitutional rights would be violated as a result of the City of Sacramento's customs and/or policies.

41. CMS seeks injunctive relief and attorney's fees and costs incurred bringing this action.

FOURTH CLAIM FOR RELIEF

Public Nuisance

Cal. Civ. Code §§ 3490, *et seq.*

Against the City of Sacramento

42. CMS realleges and incorporates by this reference each and every allegation set forth above as though also fully set forth below.

///

///

43. California defines nuisance as:

[a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of a navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance.

44. That statute "is an expression of the Legislature's public policy against public nuisances, and it is plainly aimed at protecting the public from the hazards created by public nuisances."[1] In addition to health and safety hazards, "[a] reduction in property values caused by activities on a neighboring piece of land, and an assault on the senses by noise, dust, and odors, are just the kinds of harm that common law suits to abate a nuisance are designed to redress."[2] A public nuisance is the substantial and unreasonable interference with a public right.[3]

45. As described above, the City of Sacramento, by its abandonment and failure to maintain the public property under its control and to enforce the laws requiring the same, is perpetuating and facilitating a public nuisance. This conduct has been exacerbated by the City's aforementioned policy, which was formulated and implemented by the highest-ranking decisionmakers of the City of Sacramento, to abandon the area, treat it as a containment zone, and to direct law and code enforcement not to enforce the law as applied to the homeless population.

46. CMS has experienced a substantial and unreasonable interference with the enjoyment of its property. CMS has suffered and continues to be threatened with respect to its well-being, by constant threat of disease and the experience of human waste, trash, tents, and encampments outside of its property, as well as on the sidewalks and streets. CMS has also suffered injury to its constitutional rights under the United States and California Constitutions.

---

[1] *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 136 (2017).
[2] *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 505 (7th Cir. 1996).
[3] *San Diego Gas & Elec. Co. v. Superior Court*, 13 Cal. 4th 893, 938 (1996).

1  47. CMS has been damaged in its own right, and it did not consent to the City of Sacramento's conduct.

### FIFTH CLAIM FOR RELIEF

### Private Nuisance

### Cal. Civ. Code §§ 3501, et seq.

### Against the City of Sacramento

48. CMS realleges and incorporates by this reference each and every allegation set forth above as though also fully set forth below.

49. CMS owns the Property. By the City of Sacramento's actions and inactions, the City of Sacramento has created a condition or permitted a condition to exist that is harmful to health, is indecent and offensive to the senses, obstructs the free passage and use of public parks, squares, streets, highway, and sidewalks, permits unlawful sales of illicit narcotics, and constitutes a fire hazard, as described above.

50. The City of Sacramento's conduct has been and is intentional and unreasonable, or unintentional but negligent or reckless. Alternatively, the condition permitted to exist was the result of abnormally dangerous activity that substantially interfered with CMS's use or enjoyment of its property, and that would reasonably annoy or disturb an ordinary person. CMS did not consent to the City of Sacramento's conduct, and it was harmed as a result.

51. The seriousness of the harm caused by the City of Sacramento's acts and omissions is outweighed by any public benefit of such conduct, which is nonexistent.

52. CMS seeks no monetary damages through this claim and submits this claim for only equitable and injunctive relief. As a result, the City of Sacramento is not entitled to immunity under the California Government Code.

///
///
///
///

SIXTH CLAIM FOR RELIEF

Violation of Mandatory Duty

Cal. Gov't Code § 815.6 and Cal. Welf. & Inst. Code § 17000

Against the City of Sacramento

53. CMS realleges and incorporates by this reference each and every allegation set forth above as though also fully set forth below.

54. The City of Sacramento is liable under California Government Code § 815.6 and a common law negligence theory for violation of a statutorily mandated duty to provide medical care for the indigent. Welfare & Institutions Code § 17000 provides:

> Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions.

55. California Welfare & Institutions Code § 10000 clarifies and defines the purpose of these obligations as follows:

> The purpose of this division is to provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed. It is the legislative intent that aid shall be administered and services provided promptly and humanely, with due regard for the preservation of family life, and without discrimination on account of ancestry, marital status, political affiliation, or any characteristic listed or defined in Section 11135 of the Government Code. That aid shall be so administered and services so provided, to the extent not in conflict with federal law, as to encourage self-respect, self-reliance, and the desire to be a good citizen, useful to society.

///

56. Section 10000 and 17000 taken together mandate that "medical care be provided to indigents . . . promptly and humanely."[4] This means that cities and counties must provide medical care to the poor "at a level which does not lead to unnecessary suffering or endanger life and health."[5] The California Supreme Court has held that municipalities must provide "subsistence medical services."[6] Cities and counties have an obligation to provide "'medically necessary' care, not just emergency care."[7] Importantly, a city or county's obligation to provide medically necessary care must be fulfilled "without regard to its fiscal plight."[8] "Medically necessary" for adults is defined by statute: "[A] service is 'medically necessary' or a 'medical necessity' when it is reasonable and necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain."[9]

57. In view of the above-described facts and circumstances, and the significant studies, statistics, and reports, including those identified above, and other evidence that may be provided, a person's status as an unsheltered homeless individual both causes and exacerbates physical and mental health problems, ultimately causing much higher rates of infection, disease, decay, pain, and death.

58. Basic shelter is "medically necessary" because it is "reasonable and necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain," and the City of Sacramento's failure to provide the same to its homeless population constitutes a breach of its duty under California Welfare & Institutions Code §§ 10000 and 17000.

59. CMS has been damaged by the City of Sacramento's failure to provide shelter, as described in detail above.

60. CMS seeks no monetary damages through this claim. CMS seeks only equitable and injunctive relief. As a result, the City of Sacramento is not entitled to immunity under the California Government Code.

---

[4] *Tailfeather v. Board of Supervisors*, 48 Cal. App. 4th 1223, 1245 (1996).
[5] *Id*. at 1240.
[6] *Hunt v. Superior Court*, 21 Cal. 4th 984, 1014 (1999).
[7] *County of Alameda v. State Bd. of Control*, 14 Cal. App. 4th 1096, 1108 (1993).
[8] *Id*.
[9] Cal. Welf. & Inst. Code § 14059.5(a).

SEVENTH CLAIM FOR RELIEF

Deprivation of the Guarantee of Safety and the Pursuit of Happiness

Cal. Const. Art. I, § 1

Against the City of Sacramento

61. CMS realleges and incorporates by this reference each and every allegation set forth above as though also fully set forth below.

62. California Constitution, Article I, Section 1 provides:

All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

63. The actions by the City of Sacramento have limited, damaged, and/or burdened CMS's constitutionally guaranteed inalienable rights, including CMS's rights to enjoy and defend its life and liberty, to acquire, possess, and protect its property, and to pursue and obtain safety, happiness, and privacy.

64. CMS seeks no monetary damages through this claim. CMS seeks only equitable and injunctive relief. As a result, the City of Sacramento is not entitled to immunity under the California Government Code.

### PRAYER FOR RELIEF

WHEREFORE CMS prays for judgment against the City of Sacramento as follows:

1. Injunctive/equitable relief in a manner to be determined by law.
2. An award of costs of suit, including attorney's fees, as permitted by law.
3. Such other and further relief as this Court deems just and proper.

Dated: October 10, 2022

weintraub tobin chediak coleman grodin
Law Corporation

By: _____
Josh H. Escovedo, State Bar No. 284506
Attorneys for Plaintiffs CMS Lathrop Way, LLC & CMS Woodlake Property, LLC